UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA M. GALE,<br><br>   Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>   Defendant. | Case No. CV 10-5516 JC<br><br>MEMORANDUM OPINION |

**I. SUMMARY**

  On July 26, 2010, plaintiff Maria M. Gale ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

  This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; August 3, 2010 Case Management Order, ¶ 5.

///

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On December 11, 2007, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 16, 150). Plaintiff asserted that she became disabled on February 13, 2006 due to multiple physical and mental impairments including neck and back pain (due to previously suffering a broken neck, receiving replacement vertebra and the placement of titanium rods, plates and screws in her neck and back), terrible headaches, anxiety and depression, and vision problems. (AR 171).

The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), medical experts Betty L. Borden, M.D. and Minh Vu, M.D.[2] on August 19, 2009. (AR 16, 52, 55).

On September 30, 2009, the ALJ determined that plaintiff was not disabled prior to June 6, 2008, but became disabled on June 6, 2008, and remained disabled through the date of the decision. (AR 16, 27). Specifically, the ALJ found that: (1) between February 13, 2006 (*i.e.*, the date on which plaintiff alleges she became disabled) and June 6, 2008 (the date on which plaintiff actually became disabled according to the ALJ) plaintiff suffered from the following severe impairments: spondylitis of the cervical spine, history of left foot fracture, capsulitis of the left shoulder, and anxiety disorder (AR 18); (2) prior to June 6, 2008, plaintiff's

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2] The hearing transcript identifies this medical expert phonetically as "Lyn Wood." (AR 52, 55).

impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 20); (3) prior to June 6, 2008, plaintiff retained the residual functional capacity to perform simple, routine tasks at the light level of physical exertion (as defined in 20 C.F.R. 404.1567(b)), but with several exertional limitations (AR 21);[3] (4) plaintiff could not perform her past relevant work (AR 25); (5) prior to June 6, 2008, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, specifically ticket taker, information clerk, and counter clerk (AR 25-26); and (6) plaintiff's allegations regarding her subjective symptoms and limitations lacked credibility in several respects (AR 21-23).

The Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

---

[3]The ALJ determined that plaintiff (i) could lift up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to six hours in an eight-hour workday, sit up to six hours in an eight-hour workday; (ii) could not perform work that involves extreme range of movement with the neck, climbing ladders, ropes and scaffolds, unprotected heights or dangerous machinery, or use of her left arm for above-the-shoulder level work; (iii) was limited to only frequent use of her left lower extremity for pushing and pulling; and (iv) could occasionally use her right arm for above-the-shoulder level work. (AR 21).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

    (1)    Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

    (2)    Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

    (3)    Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

    (4)    Does the claimant possess the residual functional capacity to perform her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

    (5)    Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.**    **Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal

error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. The ALJ Properly Evaluated the Medical Evidence

Plaintiff contends that the ALJ improperly rejected the opinions of Dr. Srinath Samudrala, plaintiff's treating neurosurgeon, in favor of those expressed by Dr. Minh Vu, the testifying medical expert. (Plaintiff's Motion at 3-13). The Court finds that a remand or reversal on this basis is not warranted.

#### 1. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A

5

treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[4] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician's opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer

---

[4]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

When they are properly supported, the opinions of physicians other than treating physicians, such as examining physicians and non-examining medical experts, may constitute substantial evidence upon which an ALJ may rely. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it"). Where, as here, a conflict exists between the assessment of a non-examining, testifying physician based on objective clinical findings and the assessment of a treating physician, the non-examining physician's opinion may itself constitute substantial evidence warranting rejection of the treating doctor's opinion, and it is the sole province of the ALJ to resolve the conflict. Morgan, 169 F.3d at 600; Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 2. Pertinent Facts

On February 27, 2008, Dr. Samudrala completed a Medical Source Statement – Physical, in which he opined that plaintiff (1) could lift and/or carry 10 pounds occasionally, and less than 10 pounds frequently; (2) could stand and/or walk with normal breaks less than two hours in an eight-hour workday; (3) could sit with normal breaks three hours in an eight-hour workday; (4) needed to alternate sitting and standing hourly; (5) could never climb, balance, stoop, kneel, crouch, crawl or reach; (6) could only occasionally handle, finger and feel; and (7) could not do work involving heights or moving machinery. (AR 289-91).

In Physical Residual Functional Capacity Questionnaires dated August 5, 2008, and July 10, 2009, respectively, Dr. Samudrala diagnosed plaintiff with cervical spondylosis with myeloradiculopathy T1 fracture and opined that plaintiff (1) could lift and/or carry 10 pounds or less occasionally; (2) could stand and/or walk with normal breaks less than two hours in an eight-hour workday; (3) could sit with normal breaks less than six hours in an eight-hour workday; (4) needed to shift positions at will throughout the day; (5) required a 20 minute unscheduled break every two hours during an eight-hour workday; (6) would be absent from work due to her impairments or treatment more than three times a month; (7) was limited in pushing and/or pulling with her upper extremities; (8) could never bend, climb, crouch, balance, kneel, crawl or reach; and (9) could only occasionally handle or finger. (AR 322-25, 332-35). In an addendum to the August 5, 2008 Physical Residual Functional Capacity Questionnaire, Dr. Samudrala stated that his opinions also applied to plaintiff's medical condition as early as November 2006. (AR 222, 376).

On April 8, 2008, Dr. H. Harlan Bleecker, a board-certified orthopaedic surgeon, conducted a complete orthopedic evaluation of plaintiff which included a physical examination. (AR 292-95). Dr. Bleecker opined that plaintiff could sit, stand and walk six out of eight hours, lift 20 pounds occasionally and 10 pounds frequently, only occasionally reach with either upper extremity, and was not restricted in the lower extremities. (AR 295).

Dr. Minh Vu, the medical expert, testified at the administrative hearing that plaintiff was limited to light work, was precluded from work activity requiring extreme range of movement involving the neck, climbing ladders, ropes and scaffolds, unprotected heights or dangerous machinery, and was precluded from activity involving work at above-the-shoulder level on the left side. (AR 23, 79-81).

///

### 3. Analysis

Plaintiff's claim that the ALJ erroneously rejected Dr. Samudrala's opinions lacks merit.

First, an ALJ may properly reject a medical opinion that conflicts with the physician's own treatment notes or is unsupported the record as a whole. <u>Connett v. Barnhart</u>, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); <u>Batson</u>, 359 F.3d at 1195 (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole or by objective medical findings); see <u>Tonapetyan</u>, 242 F.3d at 1149 (ALJ need not accept treating physician's opinions that are conclusory and brief, or unsupported by clinical findings, or physician's own treatment notes). Here, as the ALJ correctly noted, Dr. Samudrala's treatment records for plaintiff lack evidence of significant clinical and laboratory abnormalities which would support the extreme limitations he assessed for plaintiff. For example, the medical expert testified that Dr. Samudrala's limitation to less than two hours of standing or walking suggests an impairment to plaintiff's lumbar spine. (AR 24, 81-82, 87-88). Dr. Samudrala's diagnosis, however, was that plaintiff suffered from cervical spondylosis – a condition associated with the neck.[5] (AR 322, 332). The medical expert also testified that Dr. Samudrala's progress notes otherwise lacked clinical findings of plaintiff's weakness or motor loss which might have supported the treating physician's opinions as to plaintiff's extreme limitations. (AR 24, 81-82, 87-88).

Dr. Samudrala's opinions also conflict with plaintiff's statements in her physical therapy records that her pain level had progressively improved (*i.e.*, May

---

[5]See <u>Cervical Osteoarthritis (Cervical Spondylosis)</u>, WebMD website available at http://www.webmd.com/osteoarthritis/cervical-osteoarthritis-cervical-spondylosis ("Cervical spondylosis is . . . a condition involving changes to the bones, discs, and joints of the neck.").

9

4, 2007 note: "[patient] reports [] neck is feeling much better"; May 14, 2007 note: "[patient] reports neck is feeling good; [patient] would like to start taking aerobics classes which were approved by surgeon"; June 18, 2007 note: "[patient] reports neck is feeling good; [patient] is able to exercise w/o soreness during or after."). (AR 267-68). The testimony of the medical expert which is consistent with the other medical evidence in the record (particularly Dr. Bleecker's opinions which are based on that doctor's independent examination of plaintiff) constitutes substantial evidence in support of the ALJ's rejection of Dr. Samudrala's opinions. Morgan, 169 F.3d at 600.

Second, the ALJ also noted that Dr. Samudrala's progress reports "rarely" contained physical examinations or clinical findings, and instead "focus[ed] more on [plaintiff's] complaints. (AR 24) (citing Exhibit 13F [AR 332-45]). The ALJ properly discounted Dr. Samudrala's opinions to the extent they were based solely on such subjective complaints. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ properly rejected opinion of treating physician which was based solely on subjective complaints of claimant and information submitted by claimant's family and friends).

Third, an ALJ may properly reject a treating physician's opinions that are inconsistent with a claimant's demonstrated abilities. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected opinion of treating physician who prescribed conservative treatment and where the plaintiff's activities and lack of complaints were inconsistent with the physician's disability assessment); Magallanes, 881 F.2d at 751-52 (ALJ may properly reject a medical opinion if it is inconsistent with a plaintiff's demonstrated abilities). As the ALJ correctly noted, Dr. Samudrala's opinions are inconsistent with plaintiff's request to engage in aerobic exercise, her functional activity during physical therapy, and her work from home as an on-line travel agent 2-3 hours each day. (AR 24) (citing Exhibit 1E-2E [AR 156-62]; Exhibit 3F [AR 260-68]).

Finally, plaintiff suggests that testimony from the medical expert could not serve as substantial evidence supporting the ALJ's decision to reject Dr. Samudrala's opinions because the medical expert (1) "had no expertise in neurosurgery, orthopedics, or pain management, and no experience in treating patients post-cervical fusions"; (2) "was not adequately familiar with material medical evidence in the record"; and (3) "was unable to articulate any specific and valid reasons for disagreeing with the [residual functional capacity] assessment provided by Dr. Samudrala." (Plaintiff's Motion at 6-13). The Court disagrees. First, since plaintiff did not claim at the administrative hearing that the medical expert was not licensed as a physician, she waived any objection on that basis. See Ischay v. Barnhart, 383 F. Supp. 2d 1199, 1222 n.16 (C.D. Cal. 2005) ("If a party fails to object to an expert's qualifications at the hearing, he waives the right to challenge them."). Second, plaintiff's challenges to the medical expert's experience in specific areas of medicine, to the expert's familiarity with the record evidence, and to the substance of the expert's testimony raise issues of credibility which are reserved solely to the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) (Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.") (citations and internal quotation marks omitted).

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

**B. The ALJ Properly Evaluated Plaintiff's Credibility**

　　**1. Pertinent Law**

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins,

466 F.3d 880 at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard a claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. Burch, 400 F.3d at 681.

Questions regarding a claimant's credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second- guess" it. Rollins, 261 F.3d at 856.

///
///

## 2. Analysis

Plaintiff contends that the ALJ failed properly to evaluate plaintiff's credibility. (Plaintiff's Motion at 13-17). The Court disagrees.

First, the ALJ properly discredited plaintiff's subjective complaints due to internal conflicts within plaintiff's own statements and testimony. See Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct"); see also Fair, 885 F.2d at 604 n.5 (9th Cir.1989) (ALJ can reject pain testimony based on contradictions in plaintiff's testimony). As the ALJ correctly noted, plaintiff's statements to her physical therapists in 2007 reflect that she actually experienced improvement in her symptoms and limitations. For example, plaintiff stated that her "neck and shoulder always feel a little better each day," that she "continues to get stronger," has "decreased pain," "improved stability," and could "do more ADLs that [plaintiff] had difficulty with earlier." (AR 22) (citing Exhibit 3F at 4-6 [AR 263-65]). With respect to plaintiff's alleged anxiety and depression, records from Dr. Rajiv Kumar, plaintiff's treating psychiatrist, reflect that from February 2006 until July 2007, plaintiff's mental status evaluations were consistently "within normal limits," and plaintiff frequently reported improvement in her symptoms (*i.e.*, "doing well," "denied panic attacks", "mentally better," "happy and excited" with improvement in attitude, and "mood stable"). (AR 23) (citing Exhibit 4F at 8, 10, 14, 16 [AR 276, 278, 282, 284]).

Second, the ALJ properly discredited plaintiff's subjective complaints as inconsistent with plaintiff's daily activities. See Thomas, 278 F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's

testimony). As noted above, on May 14, 2007, plaintiff stated that she wanted to start taking aerobics classes approved by her physician. (AR 22) (citing Exhibit 3F at 8 [AR 267]). In addition, although plaintiff experienced increased symptoms in June 2008, she was still able to attend yoga classes. (AR 22) (citing Exhibit 15F at 2 [AR 359]). As the ALJ noted, plaintiff has "consistently worked" for several hours per day, five days per week since her application date. (AR 23) (citing Exhibits 1E-3E [AR 156-66]). It was reasonable for the ALJ to conclude that, although plaintiff's daily work did not rise to the level of "disqualifying substantial gainful activity," it nonetheless suggests that plaintiff's daily activities are to some extent "greater than what she has alleged." (AR 23).

Third, an ALJ may properly consider a plaintiff's lack of treatment in assessing her credibility. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). Here, the ALJ noted that there was no record that plaintiff complained of pain or other limitations from her shoulder and left foot injury during an August 15, 2006 examination of plaintiff by orthopedic surgeon Robert Gazmarian, and no record of further treatment for such alleged impairments.

Finally, an ALJ may discredit a plaintiff's subjective symptom testimony in part based on conflicts with objective medical evidence. Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). Here, the ALJ noted that plaintiff's subjective symptoms were, in part, sufficiently managed by plaintiff's medication. (AR 22) (citing Exhibit 15F at 5 [AR 362]). As the ALJ also noted, the findings from Dr. Bleecker's examination of plaintiff are inconsistent with disabling limitations. Dr. Bleecker noted that plaintiff demonstrated only some decrease in range of motion of the cervical spine, had normal range of motion of the bilateral shoulders, and decreased sensation to light

touch in only two fingers. Plaintiff's motor strength was intact, and plaintiff was able to get on and off of the examination table with ease. In addition, Dr. Bleecker's report does not reflect that plaintiff complained of pain upon range of motion during the examination. (AR 22) (Citing Exhibit 7F [AR 292-95]). The report of an examination on June 11, 2008 reflects that plaintiff had intact sensory, motor, and reflexes in the upper extremities and only a "slight" decrease in cervical flexion. (AR 362-63). The ALJ also discounted plaintiff's subjective complaints in light of objective medical testing. (AR 22). A March 8, 2006 electromyelogram of plaintiff's upper extremities showed "mild left C6 sensory dysfunction," but "otherwise normal bilateral C5, C7, and C8/T1 sensory responses." (AR 250). An x-ray from approximately April 2008 shows a fracture in plaintiff's cervical spine that was "stable" and "essentially resorbing with increase in the space between that fragment and the remaining bone" with no evidence of instability. (AR 338). An x-ray in February 2009 showed "healing of the T1 fracture, good position of the cervical spine, of the bones and hardware with stable position of all the grafts." (AR 22, 336). The ALJ properly concluded that all of the above referenced evidence conflicts with plaintiff's allegation that significant subjective symptoms prevent her from working. (AR 22).

Since the ALJ provided clear and convincing reasons for discrediting plaintiff's subjective complaints, plaintiff is not entitled to a reversal or remand on this basis.

### C. The ALJ Properly Considered Lay Witness Evidence
#### 1. Pertinent Law

Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. Stout, 454 F.3d at 1056 (citations omitted); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Robbins, 466 F.3d at 885 (ALJ required to account for all lay

witness testimony in discussion of findings) (citation omitted); Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1298 (9th Cir. 1999) (testimony by lay witness who has observed claimant is important source of information about claimant's impairments); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (lay witness testimony as to claimant's symptoms or how impairment affects ability to work is competent evidence and therefore cannot be disregarded without comment) (citations omitted); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) (ALJ must consider observations of non-medical sources, *e.g.*, lay witnesses, as to how impairment affects claimant's ability to work). The standards discussed in these authorities appear equally applicable to written statements. Cf. Schneider v. Commissioner of Social Security Administration, 223 F.3d 968, 974-75 (9th Cir. 2000) (ALJ erred in failing to consider letters submitted by claimant's friends and ex-employers in evaluating severity of claimant's functional limitations).

In cases in which "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Robbins, 466 F.3d at 885 (quoting Stout, 454 F.3d at 1055-56).

### 2. Analysis

In a Third Party Function Report dated February 9, 2008, plaintiff's husband, Robert Gale, stated that (1) plaintiff has difficulty dressing and caring for her hair because she is unable to raise her arms; (2) plaintiff and her husband hired a housekeeper to assist with yard work, cleaning and laundry due to plaintiff's difficulty performing those activities; and (3) plaintiff is unable to sit for extended periods of time (collectively "plaintiff's husband's statements"). (AR 21) (citing Exhibit 7E [AR 193-200]). Plaintiff contends that the ALJ failed properly to

///

consider plaintiff's husband's statements and failed to provide sufficient reasons for disregarding them. (Plaintiff's Motion at 17). The Court disagrees.

First, the ALJ was not required to address cumulative lay statements which were already accounted for in plaintiff's residual functional capacity assessment. See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (ALJ must provide an explanation only when he rejects "significant probative evidence"). The ALJ assessed plaintiff as having the residual functional capacity to perform light work with significant additional exertional limitations (*i.e.*, the ALJ's residual functional capacity assessment precludes plaintiff from performing work that involves extreme range of movement with the neck, climbing ladders, ropes and scaffolds, unprotected heights or dangerous machinery, or use of her left arm for above-the-shoulder level work, and limit's plaintiff's use of her left lower extremity for pushing and pulling and her right arm for above-the-shoulder level work). (AR 21). The ALJ also limited plaintiff to sitting for six out of eight hours per day. (AR 21). Plaintiff fails to demonstrate that such limitations in the ALJ's residual functional capacity assessment fail to account for plaintiff's husband's assertions that plaintiff has difficulty raising her arms, needs assistance with yard work, cleaning and laundry, and is unable to sit for extended periods of time. While plaintiff suggests that her husband's statements are evidence of more significant limitations, this Court will not second-guess the ALJ's reasonable interpretation that they are not, even if such evidence could give rise to inferences more favorable to plaintiff.

Second, even if the ALJ rejected one or more of plaintiff's husband's statements, she properly did so since such statements are essentially the same as plaintiff's own subjective symptom testimony. Since, as discussed above, the ALJ provided clear and convincing reasons for rejecting plaintiff's own subjective complaints, it follows that the ALJ also gave germane reasons for rejecting plaintiff's husband's similar statements. See Valentine v. Commissioner of Social

Security Administration, 574 F.3d 685, 693-94 (9th Cir. 2009) (ALJ properly discounted spouse's testimony for same reasons used to discredit claimant's complaints which were similar).

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 5, 2011

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE